UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN W. FERRON,

    Plaintiff,

v.

SEARCH CACTUS, L.L.C., *et al.*,

    Defendants.

Case No. 2:06-cv-327
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This diversity action is before the court for consideration of a motion to dismiss (Doc. # 146) filed by Defendants Aaron Weitzman and David Weinberg ("Defendants"), a memorandum in opposition (Doc. # 171) filed by Plaintiff John W. Ferron ("Plaintiff"), and a reply. (Doc. # 176.) For the reasons that follow, the Court denies the motion.[1]

### A. Background

Plaintiff is an Ohio attorney and user of various e-mail accounts. He has allegedly received a multitude of e-mails from Defendants, who are corporate officers for, and shareholders in, co-Defendant Search Cactus LLC ("Search Cactus"), a Michigan-based limited liability company. Search Cactus used the e-mails to make offers for unspecified free products and provide notifications of prizes that Plaintiff could claim.

Plaintiff argues that the e-mail messages violated the Ohio Consumer Sales Practices Act

---

[1] The basis for federal jurisdiction over Plaintiff's claims is diversity of citizenship. 28 U.S.C. § 1332. Generally, state law supplies the rules of decision in federal diversity cases. 28 U.S.C. § 1652; *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78; *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 501 n.3 (6th Cir. 1992).

("OCSPA"), specifically Ohio Rev. Code § 1345.02(A), in a variety of ways.  Plaintiff alleges that Search Cactus is liable for the violations as a company.  He also claims that Defendants are liable for the violations as individuals because of their involvement in, and supervision of, the questionable consumer activities.  Plaintiff argues that establishing personal liability of Defendants under the OCSPA is a separate and distinct theory of liability from the common-law doctrine of piercing the corporate veil.  Plaintiff contends, therefore, that if he proves that Defendant violated the OCSPA, he does not also have to establish Defendants' personal liability by piercing Search Cactus' corporate veil.

Conversely, Defendants argue that to establish personal liability under the OCSPA, Plaintiff must prove a violation of the statute *and* meet the elements necessary to pierce the corporate veil.  Additionally, Defendants contend that corporate officers are required to deal directly with consumers in the course of an act that violates the OCSPA for them to be held personally liable under the statute.  Defendants claim that because they allegedly did not deal directly with Plaintiff during the events in question, they are not personally liable.  Defendants also assert that Plaintiff has failed to state with particularity the circumstances constituting fraud, in violation of Fed. R. Civ. P. 9(b).  Lastly, Defendants argue that because the terms and conditions listed on Search Cactus' Internet site state that Michigan law should apply in the event of a dispute, Ohio law cannot apply in this case.  The motion is now ripe for disposition.

## B. Discussion

### 1. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in favor of the pleader, and views the pleading in the

light most favorable to the non-moving party. *See e.g., Tornichio v. United States*, 263 F. Supp. 2d 1090, 1094 (N.D. Ohio 2002). Dismissal is warranted only if it appears beyond a reasonable doubt that the pleader can prove no set of facts in support of the claim that would entitle him to relief. *See, e.g.,Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Therefore, the focus is not on whether a plaintiff will ultimately prevail, but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988)). A court need not, however, accept as true "legal conclusions or unwarranted factual inferences." *Perry v. American Tobacco Co., Inc*., 324 F.3d 845, 848 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th. Cir. 1987)).

**2. The OCSPA and Piercing the Corporate Veil**

Defendants argue that corporate officers can only be personally liable if the Plaintiff can demonstrate violations of the OCSPA and meet the elements necessary to pierce the corporate veil. (Doc. # 146.) *Janos v. Murduck*, 672 N.E.2d 1021, 1024 (Ohio Ct. App. 1996). Even if Defendants were responsible for OCSPA violations, they argue, they could not be held personally liable because Plaintiff has not pierced Search Cactus' corporate veil. The Court, however, finds Defendants' argument unconvincing.

In the State of Ohio, under the common-law doctrine of piercing the corporate veil, individuals can be held personally liable for corporate offenses when:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control

> over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993).

Additionally, the OCSPA, an Ohio statute, provides a separate source of personal liability for corporate wrongs. The portion of the statute in question, O.R.C. § 1345.02(A), states in pertinent part that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." A "supplier" is defined as a "seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." O.R.C. § 1345.01(C). Plaintiff provides a laundry list of allegations in his Third Amended Complaint (Doc. # 127) that Defendants', through their e-mails and Web sites, committed numerous violations of the OCSPA, including misuse of the word "free" and failure to disclose conditions attached to claiming so-called prizes. *See also* Ohio Admin. Code 109:4-3-01, 4-3-02, 4-3-03, and 4-3-04 (providing additional examples of acts that violate the OCSPA).

Importantly, two cases decided after *Janos* in the same district – Ohio's Ninth Appellate District – state that piercing the corporate veil is unnecessary if personal liability is found under the OCSPA. *Stultz v. Artistic Pools, Inc.*, No. 20189, 2001 Ohio App. LEXIS 4561, at *12 (Ohio Ct. App. Oct. 10, 2001); *Inserra v. J.E.M. Building Corp.*, No. 2973-M, 2000 Ohio App. LEXIS 5447, at *16 (Ohio Ct. App. Nov. 22, 2000) (holding that "if the individual shareholder personally commits acts in violation of OCSPA on behalf of the corporation, he can be held personally liable for damages caused by his own acts. There is no need to pierce the corporate

veil."); *see also Grayson v. Cadillac Builders, Inc.*, No. 68551, 1995 Ohio App. LEXIS 3954, at *9 n.1 (Ohio Ct. App. Sept. 14, 1995) (stating that the OCSPA, without changing the existing common law of tort, creates a tort that imposes personal liability on corporate officers for violations of the statute "performed by them in their corporate capacities").

Defendants claim correctly that Plaintiff has not alleged any of the three *Belvedere* elements that collectively warrant piercing a corporation's veil to establish personal liability of corporate officers. (Doc. # 146.) As the aforementioned cases indicate, however, finding personal liability under the OCSPA is a separate and distinct analysis from finding personal liability under the common-law method of piercing the corporate veil. It is possible, in other words, to find personal liability under the OCSPA without finding personal liability by piercing the corporate veil. *Stultz*, 2001 Ohio App. LEXIS 4561, at *11; *Inserra*, 2000 Ohio App. LEXIS 5447, at *16. Thus, it is unnecessary in this case for Plaintiff to invoke the *Belvedere* elements.

With respect to the OCSPA, Defendants also argue that in order for a corporate officer or any employee to be personally liable under the OCSPA, the employee needs to *deal directly* with the consumer during the unfair act that violates the statute. (Doc. # 176.) *E.g.*, *Mohme v. Deaton*, No. CA2005-12-133, 2006 Ohio App. LEXIS 7021, at *17 (Ohio Ct. App. Dec. 28, 2006). Because Defendants did not deal directly with Plaintiff through the e-mail transmittals in question, Defendants argue, they cannot be personally liable under the OCSPA. Again, the Court is not persuaded.

Defendants offer a very limited and narrow reading of Ohio case law. Several Ohio Courts of Appeals have decided that to hold a corporate officer personally liable for OCSPA violations the evidence must show that the officer took part in the act, specifically directed the

5

act, or participated or cooperated in the act.  *Grayson,* 1995 Ohio App. LEXIS 3954, at *8; *see also Yates v. Mason Masters, Inc.*, No. 2002-L-001, 2002 Ohio App. LEXIS 6476, at *24 (Ohio Ct. App. Dec. 6, 2002) (citing *Grayson*, 1995 Ohio App. LEXIS 3954, at *8); *Stultz*, 2001 Ohio App. LEXIS 4561, at *11 (quoting *Grayson*, 1995 Ohio App. LEXIS 3954, at *8).  In other cases, courts have held simply that mere participation in acts that violate the OCSPA is sufficient to hold corporate officers personally liable.  *See, e.g., State ex rel. Fisher v. American Courts, Inc.*, 644 N.E.2d 1112, 1114 (Ohio Ct. App. 1994); *State ex. rel Fisher v. Warren Star Theater*, 84 Ohio App. 3d 435, 443 (Ohio Ct. App. 1992).

Plaintiff argues that Defendants can clearly be held liable under the *Grayson* standard. Specifically, Plaintiff notes that during his deposition, "Weitzman testified that either he or Weinberg approved *all* of Search Cactus' commercial email advertisements, which include the hundreds of emails Plaintiff received, each of which advised him – falsely – that he would receive a "FREE" item . . . . The same is true with respect to Search Cactus' websites" (Doc. # 171)  (emphasis in the original).  At the very least, the type of activity admitted to by Weitzman is enough to show *participation* in an unfair consumer act – presuming that plaintiff's allegations are true.

Particularly unpersuasive is Defendants' assertion that "[m]erely approving the content of emails that were to be sent, without knowing whether any of the approved emails were authorized to be sent, cannot create personal liability for corporate officers approving the email content."  (Doc. # 176.)  First, Defendants' argument ignores that ample Ohio case law, aforementioned, supports the proposition that mere participation in an unfair consumer act is enough to create personal liability for corporate officers under the OCSPA.  *Grayson*, 1995 Ohio

App. LEXIS 3954, at *8; *Yates*, 2002 Ohio App. LEXIS 6476, at *24; *Stultz*, 2001 Ohio App. LEXIS 4561, at *11; *see also American Courts, Inc.*, 644 N.E.2d at 1114; *Warren Star Theater*, 84 Ohio App. 3d at 443.  Second, under the *Grayson* guidelines, a corporate officer can be held personally liable if he or she "specifically directed" an unfair consumer act.  To argue, as Defendants do, that approval of e-mail content by the president and CEO of a company is not the same thing as authorization to send e-mails containing that content, is disingenuous.  There is hardly a clearer example of corporate officers "specifically directing" an activity.

In short, whether the benchmark is participation in a questionable consumer act or specific orders to perform such an act, Defendants can be held personally liable under the OCSPA, presuming, again, that Plaintiff's allegations are true.

### 3. Fraud allegations

Defendants argue that Plaintiff has failed to state with particularity the circumstances constituting fraud, in violation of Fed. R. Civ. P. 9(b).  (Doc. # 146.)  Defendants correctly state that, according to Rule 9(b), in all "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  However, Defendants are incorrect that Plaintiff has to comply with that rule.  Put simply, if a plaintiff does not allege fraud, that plaintiff is not bound by a rule governing fraud allegations.

As Plaintiff rightly notes, "nowhere within the Third Amended Complaint does the word 'fraud' ever appear." (Doc. # 171.)  Plaintiff is alleging violations of the OCSPA, not fraud.  And fraud is not an element needed to establish a violation of the OCSPA.  As its language makes plain, the statute is focused on "unfair," "deceptive," or "unconscionable" consumer sales practices.  O.R.C. §§ 1345.02-1345.03.  Similarly to Plaintiff's complaint, the word "fraud" is

7

nowhere to be found in the statute.  Requiring Plaintiff to follow Rule 9(b), therefore, is both irrelevant and unnecessary.

### 4. Choice of law

At the very end of their reply (Doc. # 176), Defendants assert that because the "web site terms and conditions state that Michigan law shall be the choice of law" they "cannot be found to have violated Ohio law."  This argument is not well taken for several reasons.

First, it is improper to raise such an argument for the first time in a reply memorandum when Plaintiff is incapable of responding.

Second, Defendants do not cite any legal authority to support their argument, in violation of S.D. Ohio Civ. R. 7.2(b)(1), which states that "[a]ll pleadings, briefs and memoranda containing references to statutes or regulations shall specifically cite the applicable statutes or regulations."

Third, Defendants have solicited business in Ohio, thereby subjecting themselves to Ohio law. Moreover, Defendants ignore Ohio case law supporting the proposition that Ohio law should apply in this case.  Generally in diversity cases, such as the case at bar, a district court "also sits as a court in the forum state, Ohio, and, therefore, must apply Ohio's choice of law rules as well."  *Laserworks v. Pitney Bowes, Inc.*, No. 03-3767, 2004 U.S. App. LEXIS 13867 at *10 (6th Cir. June 25, 2004) (citing *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 506 (6th Cir. 2003)).  In cases involving alleged tortious conduct, "Ohio's Supreme Court has stated that the law of the place of the injury is presumed to govern."  *Laserworks*, 2004 U.S. App. LEXIS 13867 at *10 (citing *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 288-289 (Ohio 1984).  Because the alleged injuries in the present case occurred in Ohio, Ohio's laws should govern.

Absent express agreement of the parties, the website statement that Michigan's law applies does not control in this matter.

### C. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss (Doc. # 146).

**IT IS SO ORDERED.**

>/s/ Gregory L. Frost
>GREGORY L. FROST
>UNITED STATES DISTRICT JUDGE