UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN W. FERRON,

                Plaintiff,                              Case No. 2:06-cv-327
                                                          JUDGE GREGORY L. FROST
        v.                                             Magistrate Judge Mark R. Abel

SEARCH CACTUS, L.L.C., et al.,

                Defendants.

**OPINION AND ORDER**

This diversity action is before the Court for consideration of the motion for summary judgment of Defendant Search Cactus, L.L.C. ("Search Cactus) (Doc. # 191), the motion for summary judgment on Search Cactus' counterclaims filed by John W. Ferron ("Plaintiff") (Doc. # 188), and Plaintiff's motion for summary judgment on his claim for money damages under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.02(A) (Doc. # 189). All three of these motions were filed under seal. For the following reasons, the Court **GRANTS IN PART and DENIES IN PART** both Plaintiff's motion for summary judgment on Search Cactus' counterclaims and Search Cactus' motion for summary judgment, and, **DENIES** Plaintiff's motion for summary judgment on his claims brought under the OCSPA.

## I. BACKGROUND

Search Cactus is a Michigan-based limited liability company doing business as LookDog.com and IncentiveLeader.com. (Doc. # 127 ¶ 2.) Plaintiff is an attorney licensed to practice law in Ohio and is the sole shareholder of Ferron & Associates, a legal professional association. (Doc. # 59 at 9.) On October 31, 2005, Plaintiff received an email from one of Search Cactus' web sites at his work electronic mail address, jwferron@ferronlaw.com. (Doc. #

131 ¶ 4.) The email indicated that Plaintiff had won free products. (Doc. # 32.) Based on this email, Plaintiff brought an action in the Municipal Court of Franklin County, Ohio against Search Cactus and one of its employees ("*Ferron I*") alleging that the October 2005 email violated the OCSPA. (Doc. # 131 ¶¶ 5, 7.) On March 16, 2006, Plaintiff and Search Cactus entered into a settlement agreement regarding *Ferron I*, which resulted in its dismissal with prejudice on April 3, 2006. *Id.* ¶¶ 7, 15.

Between the receipt of the October 31, 2005 email and the April 6, 2006 dismissal of *Ferron I*, Plaintiff received approximately 304 emails similar to the October 31, 2005 email. (Doc. # 191 at 12; Doc. # 32.) Plaintiff admits that "[a]t no time during the pendency of *Ferron I* did Plaintiff complain or inform Defendant that he was still receiving emails from Defendant." (Doc. # 131 ¶ 8; Doc. # 205 ¶ 8.) It was not until after the parties settled *Ferron I* that Plaintiff sent notice to Search Cactus that he had continued to receive the emails during their negotiations and settlement of *Ferron I* and intended to bring suit in federal court based upon those emails. (Doc. # 131 ¶ 10.)

Search Cactus alleges that it requested that Plaintiff provide a list of his email addresses so that they could be placed on a suppression list that would prevent emails from being sent to those addresses within ten days in accordance with the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7704. *Id.* ¶ 41. Search Cactus alleges that although Plaintiff refused to provide the email addresses, it placed his known work email address on a suppression list. *Id.* ¶¶ 11, 12.

On May 3, 2006, Plaintiff brought the instant action against Optinrealbig, L.L.C., Search Cactus, Search Cactus' Chief Executive Officer Aaron Weitzman and its President David

Weinberg.  Plaintiff avers that, since January 1, 2006, he has received 543 emails from Search Cactus.  (Doc. # 189, Exhibit 1, ¶¶ 5-6.)  The emails make offers for free products and prizes that Plaintiff could claim.  (Doc. # 32.)  Plaintiff contends that each email contains 17 violations of the OCSPA.  (Doc. # 127 14(a) - (q).)  Plaintiff requests statutory damages of more that $1.8 million, declaratory relief, and attorney fees.  *Id.*

All Defendants filed Answers.  (Doc. ## 131, 134, 195, 205.)  Search Cactus and the two individually named Defendants filed counterclaims.  (Doc. ## 131, 195.)

On June 5, 2007, Plaintiff filed his motion for summary judgment on Search Cactus' counterclaims. (Doc. # 188.)  Search Cactus opposed that motion (Doc. # 200), and Plaintiff replied in support of it (Doc. # 209).  Also on June 5, 2007, Plaintiff filed his motion for summary judgment on his claim for money damages under the OCSPA.  (Doc. # 189.)  Search Cactus filed a memorandum in opposition to that motion (Doc. # 201), and Plaintiff filed a reply supporting the motion (Doc. # 210).  On June 6, 2007, Search Cactus filed a motion for summary judgment on all of Plaintiff's claims (Doc. # 191), and Plaintiff opposed that motion (Doc. # 204).  Search Cactus filed a reply in support of its motion.  (Doc. # 211.)  The Court will address all three motions for summary judgment herein.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court may therefore grant a motion for summary judgment if

3

the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

## B.  Plaintiff's Claims

Plaintiff alleges that the emails Search Cactus transmitted to him constitute "one or more unfair and/or deceptive acts or practices in violation of Ohio Revised Code Section 1345.02." (Doc. # 127 ¶ 14.)  In its motion for summary judgment, Search Cactus argues that (1) Plaintiff's claims are barred by the doctrine of res judicata, (2) Plaintiff's claims fail because neither Plaintiff nor the transactions at issue are protected by the OCSPA, (3) Plaintiff has not made any purchases based upon the advertisements nor did Search Cactus act knowingly or unconscionably, and (4) because Michigan law applies, under that law, Search Cactus' actions

4

are not illegal.

### 1. Res Judicata

Between January 1, 2006 and April 3, 2006, Plaintiff allegedly received approximately 304 emails from Search Cactus.  Search Cactus argues, *inter alia*, that the doctrine of res judicata bars any action based upon the emails Plaintiff received before April 3, 2006, the date on which *Ferron I* was dismissed with prejudice.  (Doc. # 191 at 11.)  This Court agrees.

Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."  *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995)).  Privity is "merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."  *Thompson v. Wing*, 70 Ohio St.3d 176, 184 (1994).  A dismissal with prejudice operates as an adjudication on the merits.  *Tower City Properties v. Cuyahoga Cty. Bd. of Revision*, 49 Ohio St.3d 67, 69 (1990).

The Ohio Supreme Court has adopted an expansive view of the doctrine of res judicata providing that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit."  *Holzemer v. Urbanski*, 86 Ohio St. 3d 129, 133 (1999) (citing *Rogers v. Whitehall*, 25 Ohio St. 3d 67, 69 (1986), *Nat'l. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990) and *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995)).  To avoid the possible misleading connotations in this context of the phrase "claims which might have been litigated" in the first lawsuit, some courts prefer to refer instead to "claims which should have been litigated" in the first lawsuit.  *Id.*

*(*citing as an example, *Wilkins v. Jakeway*, 993 F. Supp. 635, 645 (S.D. Ohio 1998)).

In the case *sub judice*, it is without question that Plaintiff received the approximately 304 emails before *Ferron I* was dismissed with prejudice. *Ferron I* involved the exact same theory of recovery as the instant action and included both Plaintiff and Search Cactus. The individual Defendants in this action, the President and CEO of Search Cactus, are in privity with Search Cactus. *Wing*, 70 Ohio St.3d at 184. Therefore, any claim based upon these 304 emails should have been litigated in *Ferron I*. Plaintiff's failure to do so results in a complete bar to any relief based upon these emails under the doctrine of res judicata.

Thus, even when viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, there is no genuine issue of material fact for trial with regard to Plaintiff's claims under the OCSPA based on the 304 emails Plaintiff received from Search Cactus before April 3, 2006. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

### 2. Emails received by Plaintiff at jferron@ferronlaw.com

For an email to fall under the purview of the OCSPA it must constitute a consumer transaction. *See Culbreath v. Golding Ent., LLC*, 114 Ohio St.3d 357, 362 (2007) (in determining violations of the OCSPA, "we must first decide" whether the facsimile transmission constitutes "a consumer transaction"). The OCSPA defines "consumer" as "a person who engages in a consumer transaction with a supplier." Ohio Rev. Code § 1345.01(D). The statute defines a "consumer transaction," as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an <u>individual</u> for <u>purposes that are primarily personal, family, or household</u>, or solicitation to supply any of these things." *Id.* § 1345.01(A) (emphasis added). Search Cactus argues that it is entitled to summary

judgment on Plaintiff's claims based upon the emails sent to him at jferron@ferronlaw.com because Ferron & Associates LPA is not a consumer under the OCSPA.  (Doc. ## 131, 200.)  Further, Search Cactus contends that the emails Plaintiff solicited from Search Cactus do not constitute consumer transactions because their primary purpose was not for a  personal, familial, or household purpose.  (Doc. # 201 at 7.)  The Court will address each argument below.

### a. Were the emails sent to jferron@ferronlaw.com sent to an individual?

Search Cactus is correct that Ferron & Associates, LPA is not a consumer as that term is defined under the OCSPA because it is not an individual.  *Culbreath*, 114 Ohio St.3d at 363 ("We have declined to recognize Culbreath's right to maintain an action under the OCSPA based upon the fact that the law firm is not an "individual" for purposes of the act.").  Plaintiff himself, however, is an individual.  So the issue before this Court is whether the emails were sent to Ferron & Associates, LPA or whether they were sent to Plaintiff.

Plaintiff argues that the advertisements were sent to him personally because they were sent to "jferron."  Contrarily, Search Cactus, relying on *Culbreath*, *supra*, contends that Ferron & Associates, LPA pays for the internet services associated with the email address, thus, the emails were sent to a business entity.  (Doc. # 200 at 14.)   Search Cactus' argument is not well taken.

In *Culbreath*, the Ohio Supreme Court accepted that the transaction at issue, (*i.e.*, a facsimile), was sent to Culbreath's law firm–not to Culbreath himself.  *Id.* 363.  ("There is no dispute that the fax was sent to Culbreath's law firm . . . .").  The "unsolicited facsimile campaign intended to target large groups of men by soliciting businesses as a whole, such as golf clubs and law firms."  *Culbreath v. Golding Enters., LLC*, Franklin App. No. 05AP-1230, 2006

Ohio App. LEXIS 2429, at *18 (Ohio Ct. App. May 25, 2006).  Indeed, the "facsimile advertisement expressly referenced the recipient as one of many by stating that 'this invitation entitles you and your co-workers to free admission between 11:30am to 7:00pm Monday thru Saturday.' "  *Id.* at *19.  Here, the email advertisements are readily distinguished from the facsimile advertisement in Culbreath, in that they were not directed to any one person.  Whereas the emails were specifically sent to an individual–"jferron."

Thus, when viewing the evidence in the light most favorable to Plaintiff, the Court concludes that the unsolicited emails Plaintiff received at jferron@ferronlaw.com after April 3, 2006 were sent to an individual, and, can be used as the basis for a cause of action under the OCSPA.  Therefore, to the extent that this action is based on these unsolicited emails, it survives summary judgment.

> **b.  Was the purpose of the solicited emails primarily for personal, family or household use?**

In considering the primary purpose of the email transactions, this Court must consider the unique facts of each transaction, rather than the generic nature of the goods or services at issue. *See e.g., Lesco v. Toyota of Bedford, Inc.*, Cuyahoga App. No. 86144, 2005 Ohio App. LEXIS 6057 (Ohio Ct. App. Dec. 20, 2005); *see also* Anderson's Ohio Consumer Law Manual, Section 3.3, at 58 ("The wording of the Ohio statute, unlike that of statutes from some other states, indicates that the court should look to the actual use by the individual, rather than the typical use of the goods or services in deciding whether there is a consumer transaction.").

Here, Plaintiff admits on deposition that he affirmatively solicited the emails after his work email address was put on a suppression list, (*i.e.*, <u>before</u> Plaintiff and Search Cactus settled *Ferron I*).  (Doc. # 59, at 111, 118.)  In October 2005, Plaintiff's work email address was placed

on a suppression list so that he would not receive any further emails from Search Cactus.  (Doc. #200, Exhibit 1, ¶ 4.).  On May 10, 2006, Plaintiff's work email address was registered as a site user and was activated for the receipt of email advertisements after a confirmatory email was sent to that email address.  *Id.* ¶ 8.  On May 11, 2006, the same course of events occurred with regard to jferron@columbuss.rr.com.  *Id.* ¶ 9.  On May 28, 2006, the same course of events occurred with regard to johnwferron@hotmail.com.  *Id.* ¶ 10.  On August 25, 2006, the same course of events occurred with regard to Packerboy@aol.com.  *Id.* ¶ 11.  Each time Search Cactus became aware of Plaintiff's actions, Plaintiff's email addresses would be placed upon the suppression list.  *Id.* ¶ 13.  Plaintiff testified on deposition that he found ways to circumvent Search Cactus' use of the suppression lists so that he could access Search Cactus' websites and receive more advertisements.  (Doc. # 59, at 44-45.)

Search Cactus contends that the reason Plaintiff continued to solicit the allegedly unlawful email advertisements was to increase his damages in this lawsuit.  In response, Plaintiff asserts that his "visitation to Defendant's websites and registration are not unlawful."  (Doc. # 210, at 20.)  This argument, however, is simply of no moment in an analysis of whether Plaintiff's visits to Search Cactus' websites and Plaintiff's registration to receive emails constitute a commercial transaction.  The issue is not whether it was lawful for Plaintiff to register to receive emails from Search Cactus, but rather, whether Plaintiff's registering to receive emails from Search Cactus was primarily for personal, family or household purposes.  *See e.g., Lesco*, 2005 Ohio App. LEXIS 6057, at *7-8 (OCPSA did not apply because consumer primarily used a vehicle for business/commercial purposes); *Lawson v. Mack*, Lucas App. No. L-90-230, 1991 Ohio App. LEXIS 1752, at *4-5  (Ohio Ct. App. April 19, 1991) (remodeling

individual's primary residence was for personal, family or household purposes);  *R.V. Copeland dba Copeland Roofing v. Niedhamer*, Montgomery App. No. 9662, 1987 Ohio App. LEXIS 6687, at *9-10 (Ohio Ct. App. May 6, 1987) (individual's use of a home dispositive in determining whether it was used primarily for business or personal purposes); *Neyrinck v. Hilton Truck & Equip. Co.*, Lucas App. No. L-86-400, 1987 Ohio App. LEXIS 9374, *10 (Ohio Ct. App. October 23, 1987) (individual's use of truck dispositive in determining whether it was used for commercial or personal purposes).

In further support of his actions soliciting emails, Plaintiff claims that "Defendants admit that Plaintiff's visitation of its websites did not cause Plaintiff to receive more emails from Defendant." (Doc. # 210 at 20.)  This contention is simply inaccurate.[1]  Indeed, the heart of Search Cactus' argument is that Plaintiff's visitations to and registrations on Search Cactus' websites caused him to receive the emails that Search Cactus continuously attempted to suppress.      Finally, Plaintiff argues:

> Plaintiff is in litigation with Defendant, and entitled to conduct an investigation into the factual basis for his claims and to take note of and gather evidence concerning Defendant's business practices.  The only way for Plaintiff to view Defendant's websites and confirm its current advertising practices is to visit its websites, which are public websites that anyone can visit.

> Thus, what Defendant is effectively arguing is that Plaintiff is the only person in the world who cannot and should not visit its public websites, and the fact that he has done so on a handful of occasions means he must forfeit his claims regarding Defendant's blatantly-deceptive consumer advertising practices.

(Doc. # 210 at 3.)

---

[1]As Search Cactus accurately explains, "Plaintiff improperly extrapolates [Aaron Weitzman's deposition testimony] into an admission that Plaintiff's continued and persistent access of Plaintiff's web sites does not cause emails to be sent to him.  It does." (Doc. # 200, at 2-3.)

This Court disagrees with Plaintiff's interpretation of Search Cactus' attempts to prevent emails from being sent to Plaintiff.  The Court concludes that, conducting an investigation into the factual basis for a lawsuit is commercial in nature.  Further, the Court concludes that, soliciting emails for the purpose of increasing damages in a lawsuit that was brought by an attorney represented by his own law firm is also commercial in nature.  Therefore, the purpose of the emails at issue was not primarily personal, family, or household, and, therefore, the emails cannot constitute consumer transactions under the OCSPA.

Moreover, the Court notes that any other conclusion in these circumstances would be adverse to the purposes underlying Ohio's body of consumer law:

> This body of law has its own internal coherence, based upon assumptions about how consumers and producers act in the marketplace.  It recognizes that most of the terms in the typical consumer contract are not individually negotiated, and are often offered on a "take-it-or-leave-it" basis.  It accepts the notion that consumers will often not understand terms drafted by producers or, if they do understand them, they do not understand the risks that they present.  Finally, it understands that consumers will frequently transact under a "veil of ignorance" which will often require the mandatory disclosure of information by the producer or retailer to the consumer.

Anderson's Ohio Consumer Law Manual § 1.1, at 2-3.

The OCSPA "was enacted as a protective measure to ensure that information and bargaining disparities did not permit deceptive or unconscionable practices to prevail in the marketplace."  *Id.* § 3.3, at 64-65.  Plaintiff is an attorney who practices in, *inter alia*, consumer law–not a consumer operating under a veil of ignorance.  Plaintiff's calculated conduct is simply inimical to the purposes underlying Ohio consumer law in general and the OCSPA in particular.

Accordingly, to the extent that this action is based on emails sent to Plaintiff because of his purposeful solicitation of them–whether it was for the purpose of increasing potential

damages in this lawsuit or to conduct an investigation into the facts underlying this lawsuit–it cannot survive summary judgment.

### 3. Purchases and knowledge

Search Cactus argues that Plaintiff's claims cannot survive because Plaintiff has not made any purchases based upon the advertisements nor did Search Cactus act knowingly or unconscionably.

First, Defendant provides no law that stands for the proposition that Plaintiff was required to purchase a product based on the advertisement, nor can this Court find any.  Indeed, Plaintiff makes no claim that he was injured based on a purchase.  This argument is simply without merit.

Second, Ohio Rev. Code § 1345.02(A) provides that a plaintiff in a OCSPA case must show that the defendant acted unconscionably and knowingly.  Knowledge is defined as actual awareness and may not be inferred without objective manifestations indicating awareness. *Grayson v. Cadillac Builders*, Cuyahoga App. No. 68551, 1995 Ohio App. LEXIS 3954, at *11 (Ohio Ct. App. September 14, 1995).  After reviewing the evidence before it, the Court concludes that there is an issue of material fact as to whether Search Cactus acted unconscionably and knowingly that must be left to the jury.

### 4. Michigan law

Search Cactus argues that the terms and conditions on its websites require this case to be considered under the law of the state of Michigan.  This Court disagrees.

Indeed, this argument was already made by Search Cactus in a reply in support of its motion to dismiss.  (Doc. # 176.)  In an Opinion and Order, this Court considered it and

explained in detail why the argument fails and why the law of the state of Ohio applies to this action.  (Doc. # 193 at 8-9.)  Search Cactus has offered no reason why this Court should disregard its previous conclusion and this Court declines to do so.

### 5.  Conclusion to Plaintiff's Claims

First, res judicata prohibits the use of any email received by Plaintiff before April 3, 2006.

Second, the unsolicited emails received by Plaintiff at jferron@ferronlaw.com after April 3, 2006 were sent to an individual and can be used as a basis for Plaintiff's clam under the OCSPA.  However, all email solicited by Plaintiff or anyone on his behalf were commercial in nature and they cannot be used as a basis for an action under the OCSPA.

Third, Plaintiff's failure to purchase merchandise advertised by Search Cactus does not prohibit this action.  However, whether Search Cactus acted knowingly or unconscionably with regard to the unsolicited emails sent to Plaintiff after April 3, 2006 is an issue of fact for the jury to decide.

Fourth, Ohio law applies to this action.

Accordingly, the Court **DENIES** Plaintiff's motion for summary for summary judgment on his claim for money damages under the OCSPA, (Doc. # 189), and **GRANTS IN PART and DENIES IN PART** Search Cactus' motion for summary judgment, (Doc. # 191).

### C.  Search Cactus' Counterclaims

Search Cactus requests that this Court issue a declaration under Ohio Rev. Code § 2721.04 that (1) the settlement agreement between the parties to *Ferron I* bars this and any other future lawsuits by Plaintiff against Search Cactus; (2) Ferron & Associates LPA is not a

consumer under the OCSPA and Plaintiff does not have individual claims for the emeails sent to him at jferron@ferronlaw.com; (3) the doctrine of res judicata bars Plaintiff's recovery; and (4) Plaintiff's actions are fraudulent because Plaintiff caused emails to be sent to him for the purpose of increasing his damages.  (Doc. # 131.)  Plaintiff moves for summary judgment on all these counterclaims.  The Court will consider Plaintiff's arguments on each counterclaim *infra.*

Initially, however, the Court addresses Plaintiff's argument that he is entitled to summary judgment on all of the counterclaims because Search Cactus has failed to register with the Ohio Secretary of State.  (Doc. # 188, at 9.)  This Court, however, has already addressed this exact argument in its Opinion and Order denying Plaintiff's motion to dismiss Search Cactus' counterclaims.  (Doc. # 194.)  Plaintiff offers no reason why this Court should reconsider its previous decisions.

### 1.    Counterclaim 1:  *Ferron I* settlement agreement

Search Cactus argues that, the settlement agreement between the parties to *Ferron I* bars future lawsuits by Plaintiff against it because it acts as an accord and satisfaction and/or it acts as an equitable bar to relief.  This Court disagrees.

It is uncontroverted that the parties entered into a settlement agreement in which they agreed to dismiss with prejudice *Ferron I*.  Search Cactus contends that the language of the agreement bars the instant litigation and any future lawsuits between Plaintiff and Search Cactus.  Plaintiff, however, argues that the language unambiguously indicates that the parties' settlement involved only the resolution of *Ferron I*.  Plaintiff's argument is well taken.

The language, drafted by Search Cactus, states:

In consideration of the promises set forth in Paragraph 2 above, as well as the execution of this Agreement under the terms herein, Plaintiff, on behalf of himself

14

and any other part, person, or entity claiming under or through him, hereby releases, discharges, and acquits Defendants on behalf of themselves and any other party, person or entity claiming under or through them, each of their subsidiaries and affiliates and all of their successors, assigns, employees, officers, directors, shareholders, fiduciaries, beneficiaries, trustees, heirs and representatives, guarantors and sureties, all civil actions and appeals whatsoever which now have or which may hereafter accrue on account of or in any way arising out of any and all known or unknown, foreseen and unforeseen damages and liabilities and the consequences therefore resulting or to result from this litigation.

(Doc. # 188, Ex. 6.)

This language unambiguously indicates that the release was intended to relate to "this litigation," which all parties agree is *Ferron I*. *Ferron I* was based on the email sent to Plaintiff on October 31, 2005. This action is not based on the email sent on October 31, 2005. Accordingly, even when viewing the evidence in the light most favorable to Search Cactus, they are not entitled to a declaration prohibiting this, or future, litigation based upon the *Ferron I* settlement agreement. Therefore, the Court **GRANTS** Plaintiff's motion for summary judgment as it relates to Counterclaim 1.

### 2. Counterclaim 2: Emails received by Plaintiff at jferron@ferronlaw.com

Search Cactus requests a declaration that Plaintiff cannot base his claims upon the emails sent to him at jferron@ferronlaw.com because Ferron & Associates LPA is not a consumer, nor is Plaintiff individually a consumer in this context under the OCSPA. (Doc. ## 131, 200.) As the Court explained *supra*, of the emails received after April 3, 2006, all those Plaintiff received as a result of his solicitation are prohibited from being used in this action because they are commercial in nature. However, the unsolicited emails received by Plaintiff at jferron@ferronlaw.com after April 3, 2006 can be used as the basis for a claim under the OCSPA because they were sent to an individual.

15

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's motion for summary judgment on Counterclaim 2 and **DECLARES** that Ferron & Associates, LPA is not a consumer under the OCSPA.

### 3.  Counterclaim 3:  Res judicata

Search Cactus requests a declaration that Plaintiff's claims are barred by the doctrine of res judicata.  Based on the Court's conclusion *supra*, that res judicata prohibits any claim based on emails received before *Ferron I* was dismissed with prejudice, Defendants request is rendered moot.  Accordingly, the Court **DENIES AS MOOT** Plaintiff's motion for summary judgment. as it relates to counterclaim 3.

### 4.  Counterclaim 4:  Fraud

Search Cactus seeks a declaration that Plaintiff has committed fraud by his actions in this lawsuit.  In Ohio:

> The elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose,  concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 55 (1987).

In the case *sub judice*, Search Cactus argues, first, that Plaintiff's actions are fraudulent because he never purchased anything from Search Cactus and therefore never suffered any consequences from receipt of the emails.  (Doc. # 200 at 14-17.)  Second, Search Cactus claims that Plaintiff's actions are fraudulent because Plaintiff has not attempted to mitigate his damages. *Id.*  Both these arguments fail to shed any light whatsoever on whether Plaintiff's actions

constitute fraud. That is, Search Cactus does not explain, nor is it obvious, how Plaintiff's failure to purchase from Search Cactus or his failure to mitigate his damages constitutes fraud under Ohio law.

Search Cactus' final argument is that Plaintiff's solicitation of the emails from its websites for the purpose of increasing his damages in this lawsuit is fraudulent. (Doc. # 131 ¶ 43.) Search Cactus, however, fails to cite this Court to any law in support of this argument. Although the Court cannot say that it approves of this type of behavior from a licensed attorney, and is aware that an Ohio court recently severely criticized Plaintiff for engaging in similar behavior,[2] it cannot say that the behavior constitutes fraud under the law of Ohio.

Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment as it relates to Counterclaim 4.

### III. CONCLUSION

For the reasons set forth above, the Court:

**1. GRANTS IN PART and DENIES IN PART** Search Cactus' motion for summary judgment on all Plaintiff's claims. (Doc. # 191.) Specifically, only the <u>unsolicited</u> emails Plaintiff received at jferron@ferronlaw.com after April 3, 2006 can be used to support his claim under the OCSPA.

2. **DENIES** Plaintiff's motion for summary judgment as to his claim for money

damages under the OCSPA. (Doc. # 189.)

---

[2]In *Burdge v. Supervalu Holdings, Inc.*, Hamilton App. No. C-060194, 2007 Ohio App. LEXIS 1205 (Ohio Ct. App. March 23, 2007), a plaintiff, represented by Plaintiff's law firm Ferron & Associates, LPA, alleged that a sales receipt he had received from a business was violative of the OCSPA. The plaintiff returned to the offending business several times to increase his potential statutory damages. In awarding sanctions against Plaintiff's law firm, the First Appellate District made clear that, *inter alia*, it was "offended by the contrived nature" of the lawsuit. *Id.* at *16.

**3.  GRANTS IN PART, DENIES IN PART**, **and DENIES AS MOOT IN PART** Plaintiff's motion for summary judgment on Search Cactus' counterclaims (Doc. # 188).  Specifically, the Court:

> a.  **GRANTS** Plaintiff's motion for summary judgment as it relates to Counterclaim 1;

> b.  **GRANTS IN PART and DENIES IN PART** Plaintiff's motion for summary judgement as it relates to Counterclaim 2 and **DECLARES** that Ferron & Associates, LPA is not a consumer under the OCSPA.

> c.  **DENIES AS MOOT** Plaintiff's motion for summary judgment as it relates to counterclaim 3.

> d.  **GRANTS** Plaintiff's motion for summary judgment as it relates to Counterclaim 4.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

18